**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FOUNDATION FOR GLOBAL SUSTAINABILITY, et al, | ) ) ) | Case No. 1:25-cv-2218-CKK |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY | ) ) ) | |
| and | ) ) | |
| UNITED STATES DEPARTMENT OF ENERGY, | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**

**IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................2

INTRODUCTION ......................................................................................................5

STANDARD OF REVIEW ..........................................................................................8

ARGUMENT ...........................................................................................................10

I. The Third Cause of Action Should Not Be Dismissed Under Rule 12(b)(6) Because Plaintiffs Have Pled Sufficient Legal Theories and Factual Allegations…………………………………9

II. This Court has Jurisdiction to Resolve Plaintiffs' APA Claims………………………….20

    A. Nothing in CERCLA authorizes EPA or DOE to deviate from long-standing, national guidance without providing a reasoned explanation and supporting data and information for the deviation…………………………………………………………………22

    B. Nothing in CERCLA authorizes EPA or DOE to ignore relevant factors………………26

    C. The failures by EPA and DOE to follow the NCP were unlawful and were actions "not in accordance with law"…………………………………………………………………28

III. This Court is the Proper Venue for this Action…………………………………...………28

CONCLUSION ........................................................................................................31

Certificate of Service……………………………………………………………………32

# TABLE OF AUTHORITIES

<u>Cases</u>

*Alliance for the Wild Rockies v. U.S. Department of Agriculture,*
772 F.3d 592, 603 (9th Cir. 2014).................................................................................8, 22

*Angelus Milling Co. v. Commissioner*, 325 U.S. 293 (1945)……………………..…………......26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).…………………………….……………...…………....9

*Atchinson v. District of Columbia,* 73 F.3d 418 (D.C. Cir 1996)…………………………..….9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)……………………….……………..…..8

*Bellsouth Corp. v. FCC*, 162 F.3d 1215 (D.C. Cir. 1998)……………….…….…………..…..23

*Bennett v. Spear,* 520 U.S. 154, 117 S. Ct. 1154 (1997)…………..….… 11, 13, 19, 20, 21, 22, 25

*Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008)......................................................18

*Bradley v. Weinberger*, 483 F.2d 410 (1st Cir. 1973)…………………………………….…..28

*Brown v. Federal Aviation Administration*, Civil Action No. 23-2251 (CKK) (D.D.C. March 31, 2025)………………………………………………………………….……..……..9

*Browning v. Clinton*, 292 F.3d 238 (D.C. Cir. 2002)………………./.……………………….9

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.,* 148 F.3d 1080 (D.C. Cir 1998)…...….9

*Chelsea Industries., Inc. v. NLRB*, 285 F.3d 1073 (D.C. Cir. 2002)……………….……..…..23

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S. Ct. 814 (1971)….,…...…… 23

*Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957)………..………..…………………….…..3

*Dean v. United States*, 556 US 568, 129 S.Ct. 1849 (2009)……………………….…..……..11

*Encino Motorcars, LLC v. Navarro*, 579 U.S. ___, 136 S. Ct. 2117 (2016)……...……...….....24

*FCC v. Fox Television Stations*, 556 U.S. 502, 129 S.Ct. 1800 (2009)…….……………....…..24

*Frey v. EPA*, 751 F.3d 461, 469 (7th Cir. 2014)…………..…………………...….……..12, 13, 14

*Greater Boston Television Corp. v. FCC,* 444 F.2d 841 (1st Cir. 1970)……………………….23

*Greenaction for Health & Environmental Justice. v. United States Department of Navy*,
No. 24-CV-03899-VC, 2025 WL 808079, at *2 (N.D. Cal. Mar. 13, 2025)…...…….12, 15, 17, 18

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 108 S.Ct. 376 (1987)……………………………………………………………………………………7, 8, 10

*Hallstrom v. Tillamook County*, 493 U.S. 20 (1989)……………………………………………7, 8

*Jimenez v. Quarterman,* 555 U.S. 113, 129 S.Ct. 681 (2009)……………….……….………10

*Judulang v. Holder,* 565 U.S. 42, 132 S.Ct. 476 (2011)………………………………………23

*Krieger v. Fadely,* 211 F.3d 134 (D.C. Cir. 2000)………………………………………..9

*Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024)…..………………………… 10

*McCain v. Bank of America,* 13 F.Supp.3d, 45 (D.D.C. 2014)………………….………….. .31

*Michigan v. EPA*, 576 U.S. 743 (2015)……………………...…………………………….23

*Ohio v. EPA*, 603 U.S. 27, 144 S.Ct. 2040 (2024)……………….……….…………...........24

*Owner-Operator Independent Drivers Association, Inc. v. Federal Motor Carrier Safety Administration*, 494 F. 3d 188 (D.C. Cir. 2007)……………………………………… .23

*Pendleton v. Mukasey,* 552 F.Supp.2d 14 (D.D.C. 2008)…………………….……….…  9

*Ross v. Blake,* 578 U.S. ___, 136 S.Ct. 1850 (2016)……………….…………………  10

*Scott v. City of Hammond*, 741 F.2d 992 (7th Cir. 1984)……………………   …………  16

*Southwestern Bell Telephone Co. v. FCC*, 28 F.3d 165 (D.C. Cir. 1994)……….…………24

*Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000)..................................18

*Sun Enters., Ltd. v. Train*, 532 F.2d 280 (2d Cir. 1976)……………………………………...15, 18

*United States v. Sensient Colors, Inc.*, No. CIV. 07-1275 (JHR), 2009 WL 394317, at *9 (D.N.J. Feb. 13, 2009), *aff'd*, 649 F. Supp. 2d 309 (D.N.J. 2009)……………….……… 12, 15, 18

*Wedgewood Village Pharmacy v. DEA*, 509 F.3d 541 (D.C. Cir. 2007)………..……………23

*Weyerhaeuser Co. v. U.S. Fish and Wildlife Service*, 586 U.S. __, 139 S.Ct. 361 (2018).  19, .26

Statutes

42 U.S.C. § 9605(a)……………………………………………………………………19

42 U.S.C. § 9613(j)………………………………………………………………...26, 30

42 U.S.C. § 9620(a)(2)...………………………………….....................…………..27

42 U.S.C. § 9620(e)....………………………………........................………..6, 29

42 U.S.C. § 9659(a)(2)………………………………………….…    10, 13

42 U.S.C. § 9659(b)………………………………………………….    28

Code of Federal Regulations

40 CFR § 300.430(f)(4)(iii)………………….……………………………….6, 29

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FOUNDATION FOR GLOBAL          )
SUSTAINABILITY, et al,         )        Case No. 1:25-cv-2218-CKK
                               )
            Plaintiffs,        )
                               )
    v.                         )
                               )
UNITED STATES ENVIRONMENTAL    )
PROTECTION AGENCY              )
                               )
and                            )
                               )
UNITED STATES DEPARTMENT OF    )
ENERGY,                        )
                               )
            Defendants.        )

**INTRODUCTION**

Now come Plaintiffs Foundation for Global Sustainability, *et al*., by and through counsel, and set forth their Memorandum of Points and Authorities in Opposition to Defendants' Motion for Partial Dismissal , whereby Defendants seek dismissal of the Third Claim in the Complaint and move for a change of venue.

Defendants have mischaracterized the Plaintiffs' 60-day notice and their Complaint in a number of ways. The 60-day notice letter and the Complaint both make it abundantly clear that the violations of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), the National Contingency Plan (NCP) and the Federal Facility Agreement (FFA) raised by Plaintiffs were carried out by two Environmental Protection Agency (EPA) Administrators and memorialized in final agency decision documents signed by them. *See e.g.,* Compl. ¶ ¶ 56-60, 139, 151, 269, 270, 274-276, 279, 280, 284.  As is customary when the head

of one federal agency makes decisions affecting the interests and programs of another federal agency, the two EPA Administrators consulted and coordinated with their senior level Department of Energy (DOE) Headquarters (HQ) counterparts.  The final agency actions taken by two EPA Administrators and their senior level DOE HQ counterparts,  all residing in the District of Columbia. represent and memorialize the violations of CERCLA, the NCP and the FFA and the failures to carry out non-discretionary duties identified by the Plaintiffs in their 60-day notice letter and in their Complaint, even if the actual "shovel in the ground" implementation associated with those EPA and DOE HQ final agency actions may take place in Tennessee. In other words, Plaintiffs' cause of action is against the actions of the EPA Administrators, not the actions of DOE at Oak Ridge in causing the pollution.

Defendants, in their Motion to Dismiss, contend that the Attorney General of the District of Columbia should have been sent the 60-day notice letter. Plaintiffs in good faith copied the Attorney General of the State of Tennessee with the notice letter since the State might have an interest in this case to the extent it initiated the underlying wastewater dispute which led to the Wheeler Decision[1] and its implementation in the 2022 CERCLA Record of Decision (ROD).[2] The District of Columbia as a governmental entity had no role in the FFA dispute resolution process or the development and issuance of the 2022 CERCLA ROD, and most likely to this day is unaware of the Oak Ridge Reservation (ORR) cleanup in Tennessee. Requiring citizens to

[1] On December 31, 2020, former EPA Administrator Wheeler issued his final decision (Wheeler Decision) resolving the yearslong dispute between EPA and DOE over how to determine effluent discharge limits for wastewater discharges from two landfills at the Oak Ridge Reservation. Compl. ¶ 57.

[2] On September 30, 2022, a CERCLA ROD for EMDF was signed by officials from DOE and TDEC, and by then-EPA Administrator Michael Regan, consistent with CERCLA § 120(e)(4) (42 U.S.C. § 9620) and the NCP, 40 CFR § 300.430(f)(4)(iii). Compl. ¶ 58.  The ROD makes many references to the fact that it is based on and follows the Wheeler Decision.  Compl. ¶ 59.

comply with the notice requirements before filing suit serves two purposes. "First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits. . . . [as] an agency may be able to compel compliance through administrative action, thus eliminating the need for any access to the courts." *Hallstrom v. Tillamook County*, 493 U.S. 20, 29 (1989) (citation omitted). Second, the notice requirement affords the alleged violator "an opportunity to bring itself into complete compliance with the Act[s] and thus likewise render unnecessary a citizen suit." *Gwaltney of Smithfield, Inc.* v. *Chesapeake Bay Foundation, Inc.,* 484 U. S. 49, 60 (1987).

Requiring notice to the D.C. Attorney General, as alleged in Defendants' Motion, as a technicality in these circumstances would not further the purposes of the notice requirement (*i.e.,* provide an opportunity for the government to resolve issues without resort to litigation) and would not further the pursuit of justice in this case. This case represents a complicated set of facts not envisioned by the normal 60-day notice procedures.

In *Hallstrom*, the Supreme Court described the purpose of the 60-day notice requirement as follows:

> Rather, the legislative history indicates an intent to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits. See, *e. g.,* 116 Cong. Rec. 32927 (1970) (comments of Sen. Muskie); see also *Note, Notice by Citizen Plaintiffs in Environmental Litigation*, 79 Mich. L. Rev. 299, 301-307 (1980) (reviewing the legislative history of the Clean Air Amendments of 1970). Requiring citizens to comply with the notice and delay requirements serves this congressional goal in two ways. *First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits*. See *Gwaltney of Smithfield, Inc.* v. *Chesapeake Bay Foundation, Inc.,* 484 U. S. 49, 60 (1987) ("The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action"). *In many cases, an agency may be able to compel compliance through administrative action, thus eliminating the need for any access to the courts*. See 116 Cong. Rec. 33104 (1970) (comments of Sen. Hart). *Second, notice gives the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." Gwaltney, supra,* at 60.

*Hallstrom,* at p. 29 (emphasis added).

Similarly, in *Alliance for the Wild Rockies v. U.S. Department of Agriculture*, 772 F.3d

592, 603 (9th Cir. 2014), the 9th Circuit Court of Appeals found that:

> So too, here: notice of an alleged ESA violation provides federal agencies with an opportunity to "take responsibility" for enforcing the ESA and to correct any violation short of litigation. However, there is nothing in the ESA that remotely suggests that a potential ESA plaintiff must refrain from commencing suit to pursue other non-ESA claims before the 60-day period expires.

In the instant case, sending a notice letter to the Attorney General for the District of Columbia

would have absolutely no influence on either of the primary purposes of the 60-day notice

requirement as spelled out by the Supreme Court and the 9th Circuit. The D.C. Attorney General

has no jurisdiction over, or connection to, the ORR CERCLA NPL site in Tennessee.  Nor would

they have any role, ability or legal authority to correct the violations and failures to perform

non-discretionary duties by two EPA Administrators in this case (*i.e.*, to "compel compliance

through administrative action").  While perhaps unlikely, only the Attorney General for the State

of Tennessee might be in a position to "take responsibility" for correcting the violations and

failures of two EPA Administrators alleged by the Plaintiffs in this case by, for example,

initiating a new dispute under the FFA, something the D.C. Attorney General could never do.

## STANDARD OF REVIEW

Defendants have moved to dismiss Plaintiffs' Third Claim for "failure to state a claim

upon which relief can be granted." Defs. Mot. (citing Fed. R. Civ. P. 12(b)(6)). A complaint

"does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007). Rather, it must include "enough facts to state a claim to relief that is plausible on its

face." *Id.* 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As stated in *Browning v. Clinton*, 292 F.3d 238, 242 (D.C. Cir. 2002), "[a] Rule 12(b)(6)

motion that tests the legal sufficiency of a complaint: dismissal is inappropriate unless the

'plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'

*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." Furthermore,

"[c]omplaints `need not plead law or match facts to every element of a legal theory.'" *Krieger v.*

*Fadely,* 211 F.3d 134, 136 (D.C.Cir.2000) (quoting *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th

Cir.1998). And, "[a] plaintiff need not allege all the facts necessary to prove its claim."

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.,* 148 F.3d 1080, 1086 (D.C. Cir.1998);

nor does a complaint need to "allege all that a plaintiff must eventually prove." *Atchinson v.*

*District of Columbia,* 73 F.3d 418, 421-22 (D.C. Cir.1996).

Defendants have also requested dismissal pursuant to Fed. R. Civ. P. 12(b)(1). In

evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the

complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that

can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113

(D.C. Cir. 2000)

With regard to venue, as stated in *Brown v. Federal Aviation Administration*, Civil Action

No. 23-2251 (CKK) (D.D.C. March 31, 2025) (Memorandum Opinion), when a defendant moves

for dismissal for improper venue, "the Court accepts as true the plaintiff's factual allegations and

draws all reasonable inferences from those allegations in the plaintiff's favor. *Pendleton v.*

*Mukasey,* 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (JDB)." In *Pendleton*, the Memorandum Opinion

states:

> In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual
> allegations regarding venue as true, draws all reasonable inferences from those
> allegations in the plaintiffs favor, and resolves any factual conflicts in the plaintiff's
> favor." *Darby v. U.S. Dep't of Energy,* 231 F.Supp.2d 274, 276-77 (D.D.C.2002) (citing
> *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.,* 148 F.Supp.2d 50, 54 (D.D.C.2001)).

**ARGUMENT**

**I. The Third Cause of Action Under 42 U.S.C. § 9659(a)(2) – Failure to Perform Non-Discretionary Acts and Duties under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) -- Should Not Be Dismissed Under Rule 12(b)(1) or 12(b)(6) Because Plaintiffs Have Pled Sufficient Legal Theories and Factual Allegations**

Defendants argue that the allegations in the Plaintiffs' Complaint "do not implicate nondiscretionary duties under CERCLA." Def. Mot. at p. 12.  The Defendants' argument is based on flawed statutory interpretations of CERCLA and deserves no deference under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).  Plaintiffs request this Court to reject it. Plaintiffs have pled sufficient facts and legal theories for the Court to deny the Motion to Dismiss the Third Claim under Rule 12(b)(1) and 12(b)(6).

The plain language of CERCLA does not support the Defendants' argument. "It is well settled that `the starting point for interpreting a statute is the language of the statute itself.'" *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 56, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). "[W]hen the statutory language is plain, [the court] must enforce it according to its terms."  *Jimenez v. Quarterman,* 555 U.S. 113, 118, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009). *See also Ross v. Blake,* 136 S.Ct. 1850, 1856 (2016) ("Statutory interpretation, as we always say, begins with the text.").

Courts should "`resist reading words or elements into a statute that do not appear on its face.'" *See Dean v. United States*, 556 US 568, 129 S.Ct. 1849, 173 L. Ed. 2d 785 (2009), quoting *Bates v. United States,* 522 U.S. 23, 29, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997)).

Beginning with the text of CERCLA, the statute uses "shall" when imposing a number of requirements. In *Bennett v. Spear,* 520 U.S. 154, 175, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997), the Supreme Court found:

And any contention that the relevant provision of 16 U. S. C. § 1536(a)(2) is discretionary would fly in the face of its text, which uses the imperative "shall."

As explained in detail in the Complaint, (See e.g., Compl. ¶ ¶ 68 and 69),

long-standing, published interpretations of CERCLA by the Environmental Protection Agency

(EPA) clearly indicate that the statute imposes a number of mandates and mandatory duties once

a federal agency decides that the use of CERCLA response authority is warranted. As stated in

EPA's *Rules of Thumb for Superfund Remedy Selection* (1997):

Section 121 of the Superfund statute (the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)) established five principal requirements for the selection of remedies. Remedies *must*: 1) protect human health and the environment; 2) comply with applicable or relevant and appropriate requirements (ARARs) unless a waiver is justified; 3) be cost-effective; 4) utilize permanent solutions and alternative treatment technologies or resource recovery technologies to the maximum extent practicable; and 5) satisfy a preference for treatment as a principal element, or provide an explanation in the ROD as to why this preference was not met.[3]

Plaintiffs in their Complaint have identified a number of imperative "shalls" in CERCLA

and in the NCP, 42 C.F.R. Part 300. See e.g.,  Compl. ¶ ¶ 71 -  89.  At a minimum, non-

discretionary duties identified in the Complaint include: (1) the requirement to select remedies

which ensure protectiveness of human health and the environment (Compl. ¶ ¶ 72, 73); (2) the

requirement to select remedies which utilize treatment to the maximum extent practicable

(Compl. ¶ 72) – in this case ion exchange resin treatment technology -- in the 2022 CERCLA

Record of Decision (ROD); (3) the requirement to explain why treatment to the maximum extent

practicable was not selected (Compl. ¶ 72) in the 2022 CERCLA ROD; and (4) the requirement

to publish a proposed plan (Compl. ¶ 76) for effluent discharge limits, which the 2022

CERCLA ROD states is an essential part of the cleanup, after the Wheeler Decision was issued .

The statutory and regulatory requirements for these duties are clearly laid out in the Complaint,

and none of them have been satisfied.

---

[3]  https://semspub.epa.gov/work/HQ/174931.pdf (emphasis added).

According to the Defendants' Motion to Dismiss, "[n]one of the "duties" on which Plaintiffs base their challenges is actionable under section 310(a)(2)."  Mot. Dis. at p. 13.   In effect, the Defendants argue that everything they do when carrying out CERCLA authority is discretionary, notwithstanding Congress' use of the imperative "shalls."  The Defendants rely on *Frey v. EPA*, 751 F.3d 461 (7th Cir. 2014), *Greenaction for Health & Environmental Justice. v. United States Department of Navy*, No. 24-CV-03899-VC, 2025 WL 808079, at *2 (N.D. Cal. Mar. 13, 2025), and *United States v. Sensient Colors, Inc.*, No. CIV. 07-1275 (JHR), 2009 WL 394317, at *9 (D.N.J. Feb. 13, 2009), *aff'd*, 649 F. Supp. 2d 309 (D.N.J. 2009).  Reliance on the *Frey*, *Greenaction* and *Sentient* cases for this proposition, however, is of limited value with respect to the facts of this case.  For example, none of these cases involved a final dispute resolution decision issued by an EPA Administrator pursuant to an FFA. None of these cases involved a CERCLA ROD signed by an Administrator. None of these cases involved the number of flagrant deviations from the relevant factors of decision making based on the requirements of CERCLA and the NCP, and EPA's longstanding national guidance documents and policy statements.[4] None of these cases involved decisions that resulted in increased levels of risk to human health and the environment measured by orders of magnitude.  The instant case involves much more than a mere disagreement over the manner in which the Defendants have carried out their duties and discretion; it involves the disregard by the Defendants of their duties and the abuse of their discretion.

---

[4] For purposes of judicial review, consideration of relevant factors includes how an agency (for example, the two EPA Administrators in this case) treats longstanding national guidance documents, policy statements, and interpretative rules, especially when they have been prepared and peer-reviewed by subject-matter experts and provide technical, scientific and procedural benchmarks.  These relevant factors are incorporated into the statute through CERCLA § 120(a)(2).  *See* discussion in II below.

With respect to *Frey*, it is important to note that the 7th Circuit did determine that EPA has a non-discretionary duty to select CERCLA remedies that ensure protectiveness of human health and the environment.  *Frey*, at p. 470.  As such, the *Frey* decision does not support the Defendants' Motion to Dismiss since Plaintiffs' Complaint (¶ 279), at a minimum, clearly alleges a failure to carry out the non-discretionary duty to select remedies which ensure protectiveness of human health and the environment.

In other respects, however, *Frey* has limited relevance to the facts of the instant case.  For example, the 7th Circuit found that:

> What is now § 310 of CERCLA permits citizen suits against the EPA only if they allege a failure to perform an act or duty under CERCLA "which is not discretionary." 42 U.S.C. § 9659(a)(2). The Supreme Court has interpreted identical language in the Endangered Species Act citizen suit provision to allow review only of whether the EPA followed required decision-making procedures. See *Bennett v. Spear,* 520 U.S. 154, 172, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

*Frey*, at p. 469.

While the citizen suit provisions in ESA and CERCLA are similar to some extent, they are not identical.  One significant difference for purposes of the instant case is the fact that the CERCLA citizen suit encompasses any violation of a CERCLA 120 Federal Facility Agreement (FFA), which is signed by both EPA and another liable federal agency at National Priority List (NPL) sites like Oak Ridge Reservation.  Thus, the roles and duties of the Secretary of Interior under the ESA are not identical to the roles and duties of the EPA Administrator under CERCLA, and are totally different from the roles and responsibilities of liable federal agencies like DOE at ORR. The 7th Circuit also appears to have ignored a key aspect of *Bennett*: the availability and relevance of judicial review under the Administrative Procedure Act where a citizen suit provision might not provide a basis for judicial review.

However, in any event, the need for an agency to follow "required decision-making procedures" certainly does apply to the instant case where Plaintiffs have alleged that the failure by EPA Administrators and their DOE HQ counterparts to follow CERCLA and NCP procedures and considerations have resulted in failures to carry out non-discretionary duties for purposes of CERCLA § 310(a)(2).

In addition, the 7th Circuit determined that "[i]n fact, the EPA is explicitly directed to consider other factors, including cost, when selecting a remedy. 42 U.S.C. § 9621(b)(1)."[5]  The 7th Circuit opinion, however, did not address those other CERCLA § 121(b) factors – which for example, include the requirement to select remedial actions that utilize treatment to the maximum extent practicable and to explain why such treatment was not utilized (Complaint 72) -- perhaps because they were not raised by plaintiffs in that case.

On the merits, the Court of Appeals did accept EPA's argument that reducing PCB contamination was enough to satisfy its non-discretionary duty to ensure protectiveness of human health, noting that EPA is not required to "select the most protective remedy," as the plaintiffs in *Frey* had argued.  However, Plaintiffs' request for relief in this case does not ask this Court to impose "the most protective remedy;" rather, Plaintiffs are seeking to require selection of a remedy which ensures protectiveness of human health and the environment based on longstanding, relevant factors EPA itself has established and published in the NCP, the NCP preamble, and extensive program guidance.

*Greenaction* is also of limited relevance to the instant case.  The major issues in that case, which is now only in the Motion for Summary Judgment stage, involved the lack of full and

---

[5] While not relevant to the remedy selection  issues raised by Plaintiffs in this case, it is noteworthy that the Court of Appeals confused "cost effectiveness" – which is required under CERCLA – with "cost" – which is a significantly different factor and is addressed in the NCP, but not in CERCLA § 121(b).

accurate site characterization sampling and data collection, as well as use of outdated toxicity information, in the Navy's nearly twenty-year old removal action.  Of note, the judge in the context of the Five year Review duty in CERCLA  § 121(c), did make the following determination:

> The government argues that the Navy is under no obligation to ensure in its five-year reviews that the cleanup is actually protective of human health and the environment… The Navy argues that this language only establishes an "objective" for these reviews—and thus that a reviewing agency needs to do no more than publish a document stating that it has determined that the remedial actions are protective. *But that can't possibly be right. On that interpretation, the reviewing official could just grab a lawn chair and a six pack, sit onsite for a day, and call it a job well done. It's inconceivable that the five-year review requirement was meant to be so toothless.*

Order Granting in Part and Denying in Part Motion to Dismiss, at p. 6 (March 13, 2025) (emphasis added).

The *Sensient* case cited by Defendants also has little bearing with respect to the specific non-discretionary duties at issue in this case. *Sensient* was a CERCLA cost recovery action filed by the United States where the private party defendant raised two main issues based on alleged non-discretionary duty violations, neither of which was related to the non-discretionary duties raised by Plaintiffs in this case: first, whether the statutory time and dollar limitations for removal actions had been improperly exceeded, and second, whether EPA improperly prepared the administrative record.  An important consideration for the District court regarding the resolution of the first non-discretionary duty claim was that CERCLA provides express exemptions for the statutory time and dollar limitations; no such express exemptions exist for the non-discretionary duties Plaintiffs have alleged in their Complaint.  In addition, with regard to the second issue, at this time Plaintiffs have not alleged and have no reason to believe that the Defendants will prepare a deficient administrative record for ORR.

Finally, Defendants also cite *Sun Enters., Ltd. v. Train*, 532 F.2d 280 (2d Cir. 1976).  This case, however, does not involve CERCLA provisions. In fact, it was decided several years prior to the enactment of CERCLA. As such, the court's analysis of non-discretionary duties under the CWA is of limited relevance to the facts of this CERCLA federal facility NPL cleanup. Similarly, the Clean Water Act non-discretionary duty analysis in *Scott v. City of Hammond*, 741 F.2d 992 (7th Cir. 1984), cited by Defendants, was decided before CERCLA §§ 120 and 121 were added to the statute and has little resemblance to the number and types of non-discretionary duties found in CERCLA – for example, the duty to select remedies which utilize treatment technology *to the maximum extent practicable* -- which were disregarded by the Defendants in the instant case.

In effect, the Defendants argue that their duty is limited to only saying that a CERCLA remedy is protective, and that they do not need to do more than make that representation. They need only say that they have selected a remedial action that uses treatment technology, they do not need to do more than make that representation. Yet, if these non-discretionary duties were meant by Congress to be meaningful, if they are to be anything more than just hollowed-out shells, EPA and DOE have to do more than just say they have done *something,* regardless of substance. The agencies had to do more than just say they may think about treatment some more later. More than just say a proposed plan was issued even if it didn't mention an essential part of the remedial action addressed by the Wheeler Decision and even if the supporting Remedial Investigation/Feasibility Study (RI/FS) was not published beforehand. More than just say that what they did was good enough for government work even if it did not follow the requirements in the NCP. Otherwise, as Judge Chhabria recently ruled in *Greenaction*, these duties are "toothless;"and as such, the Defendants'  interpretation "can't possibly be right."

With regard to the non-discretionary duty to select remedies which utilize treatment technology to the maximum extent practicable, Defendants state that "Plaintiffs do not allege that the Agencies failed to select remedies that use treatment technology that "permanently and significantly reduces the volume, toxicity or mobility of the hazardous substances." Defs. Mot. at p. 17. Yet, Plaintiffs' Complaint clearly alleges just that in several places. *See e.g.*, Compl. ¶ ¶ 220, 222. Defendants also fail to mention that the statutory requirement is to select remedies which utilize treatment technology *to the maximum extent practicable*, a duty two EPA Administrators and their DOE HQ counterparts also have ignored. In fact, the ion exchange resin treatment technology described in Plaintiffs' Complaint was raised by EPA's Region 4 acting Administrator in 2019: "EPA believes that best available technology, including ion exchange, activated carbon and/or reverse osmosis technology, should be used to develop technology-based effluent limits for radionuclides and pollutant discharges into surface Waters" since those "technologies (including ion exchange, activated carbon and/or reverse osmosis technology) … are available and achievable and have proven to be effective in controlling the discharge and meeting water quality criteria." Compl. ¶ 51. And the State, in formal comments, stated it wanted the CERCLA remedy to use that treatment technology for the landfills at issue in this case because it is extremely effective, is practicable, not expensive, and is being or has been used by DOE at ORR. *See e.g.*, Compl. ¶ 45. While Defendants state that ion exchange treatment technology is the Plaintiffs' "*preferred* treatment technology," Def. Mot. at p. 17, the administrative record shows that in fact ion exchange is the treatment technology identified and preferred by the EPA acting Regional Administrator and the State, a preference for treatment to the maximum extent practicable that was arbitrarily and capriciously ignored by two EPA Administrators and their DOE HQ counterparts. And contrary to the non-discretionary duty

in CERCLA, no explanation for why this preferred treatment technology was not selected in the 2022 CEERCLA ROD has been provided. Compl. ¶ 72.

Defendants' also quote language from the NCP in their attempt to classify all CERCLA actions as discretionary. *See* Defs. Mot. at p. 16. However, the first sentence of the quoted language actually relates to the scope of the Federal Tort Claims Act, which is not at issue in this case. The other two sentences merely indicate that the NCP does not change the fact that the decision by EPA (or another federal agency) *whether to use CERCLA* response or enforcement authorities to take cleanup action is discretionary; it does not stand for the proposition that all CERCLA actions are fully committed to unfettered agency discretion. In fact, once the decision has been made to use those CERCLA authorities, the statute through the use of imperative "shalls" imposes a number of duties and requirements that must be followed. When promulgating the NCP, EPA also used the imperative "shall" to expand upon and establish a number of substantive (*e.g.*, excess cancer risk range) and procedural requirements based on CERCLA's mandates. Unless those NCP duties and requirements are not "possible" (per CERCLA § 105) or are not "practicable" (per CERCLA § 121) – neither of which is true in this case – they must be met.

For support, the Defendants cite *Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008). But that case involved CERCLA removal action authority, not remedial action authority, and none of the duties related to selection of remedial actions identified in the Plaintiffs' Complaint was at issue in *Benzman*. Like the *Frey, Greenaction, Sensient, Train* and *Scott* cases, therefore, *Benzman* is not determinative with regard to the fact of this case.

In *Bennett v. Spear*, the Supreme Court determined that the Endangered Species Act (ESA) citizen suit provision covers § 4 of that Act since it uses terms "of obligation rather than

discretion," *i.e.*, "the Secretary shall..." As such, the Court determined that judicial review of agency action would be based on administrative law principles to determine whether there was an abuse of discretion:

> But the terms of § 1533(b)(2) are plainly those of obligation rather than discretion: The Secretary *shall* designate critical habitat, and make revisions thereto . . . on the basis of the best scientific data available and after taking into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat." (Emphasis added.) . . . However, the fact that the Secretary's ultimate decision is reviewable only for abuse of discretion does not alter the categorical *requirement* that, in arriving at his decision, he "tak[e] into consideration the economic impact, and any other relevant impact," and use "the best scientific data available." . . . It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking. See *SEC* v. *Chenery Corp.,* 318 U. S. 80, 94-95 (1943). Since it is the omission of these required procedures that petitioners complain of, their § 1533 claim is reviewable under § 1540(g)(1)(C).

*Bennett,* at p. 172. *See also Weyerhaeuser, infra,* at p. 25.  Plaintiffs have alleged multiple instances of EPA and DOE ignoring the required procedures and considerations of decision making in this case.

A number of those required procedures and considerations appear in the NCP. CERCLA §105(a), 42 U.S.C. §9605(a) requires the publication, after notice and opportunity for comment, of the NCP "to reflect and effectuate the responsibilities and powers created by this chapter…which shall establish procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants." The statute goes on to require that "the response to and actions to minimize damage from hazardous substances releases *shall, to the greatest extent possible, be in accordance with the provisions of the plan*." (emphasis added).

Plaintiffs' Complaint has identified many "shalls" in the statute and in the NCP.  Since CERCLA requires that response actions – which include remedial actions like those at issue in this case – "shall, to the greatest extent possible, be in accordance with the provisions of the"

NCP, the NCP requirements identified in the Complaint which use the imperative "shall" are non-discretionary duties, as well.  The Defendants have not demonstrated that any of the NCP requirements identified by the Plaintiffs in their Complaint is impossible, or impracticable, to implement.

One example of such a non-discretionary duty is the mandate in CERCLA to select remedial actions which ensure protectiveness of human health and the environment.  As noted above, the 7th Circuit in *Frey* determined that this mandate represents a non-discretionary duty. As the Complaint alleges, that phrase is defined in the NCP, which CERCLA § 105 states, "shall establish procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants." Plaintiffs have alleged that the duty to ensure protectiveness of human health and the environment, as required in CERCLA and the NCP, has not been met by two EPA Administrators and their DOE HQ counterparts in this case. Nor have Defendants explained why they did not find it "possible to the greatest extent" to comply with the numerous NCP imperative "shalls" identified in the Plaintiffs' Complaint.

Under the reasoning of *Bennett*, those requirements – like the duty to ensure protectiveness of human health and the environment – are non-discretionary duties, and there are clear ways to measure whether those duties have not been met, as Plaintiffs allege. For these reasons, the Third Cause of Action should not be dismissed.

**II. This Court has Jurisdiction to Resolve Plaintiffs' APA Claims**

In *Alliance for the Wild Rockies*, the 9th Circuit made it clear that a party can pursue its APA claims even if the 60-day notice requirement in a citizen suit provision has not been fully satisfied yet.  The Defendants have not moved to dismiss the Plaintiffs' APA claims in this case. As such, since the final agency actions taken by two EPA Administrators together with their

DOE HQ counterparts took place in the District of Columbia, this Court is the proper venue to resolve those APA claims independent of the Plaintiffs' third claim related to the failure to carry out CERCLA non-discretionary duties.

To the extent this Court might agree with the Defendants that no non-discretionary duties repose in CERCLA, the Plaintiffs' Complaint sets forth sufficient allegations to demonstrate that the failure of two EPA Administrators working with their DOE HQ counterparts to carry out such duties violated CERCLA, the NCP and the FFA for purposes of CERCLA § 310(a)(1). Those failures, memorialized in the 2020 Wheeler Decision and in the 2022 CERCLA ROD, took place in the District of Columbia, not in Tennessee. And, to the extent this Court might agree with the Defendants that there are no non-discretionary duties in CERCLA and that CERCLA §310(a) does not provide a basis for granting relief to the Plaintiffs, *Bennett* clearly allows the Plaintiffs to pursue relief under the Administrative Procedure Act (APA).

This Court is the proper venue for both the CERCLA § 310(a)(1) causes of action and the APA cause of action.

In *Bennett*, the Supreme Court viewed the alleged ESA § 7 violations as allegations of maladministration of the interagency consultation and cooperation provisions, and determined that they could not be brought against the Secretary of the Interior under the ESA's citizen suit provisions. However, the Court went on to find:

> To complete our task, we must therefore inquire whether these § 1536 claims may nonetheless be brought under the Administrative Procedure Act, which authorizes a court to "set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U. S. C. § 706.

> No one contends (and it would not be maintainable) that the causes of action against the Secretary set forth in the ESA's citizen-suit provision are exclusive, supplanting those provided by the APA…

> Nothing in the ESA's citizen-suit provision expressly precludes review under the APA, nor do we detect anything in the statutory scheme suggesting a purpose to do so.

*Bennett,* at 174-75.

As was the case in *Bennett* with the ESA, nothing in CERCLA suggests that the citizen suit provision in §310(a) is the exclusive avenue for Plaintiffs to seek relief. Even if this Court were to agree with the Defendants that some of the alleged violations in the Complaint are not covered by CERCLA §310(a), they are still reviewable under the APA.

### A.   Nothing in CERCLA authorizes EPA or DOE to deviate from long-standing, national guidance without providing a reasoned explanation and supporting data and information for the deviation

.

Defendants argue that deviating from national, long-standing policy is not a violation of law under CERCLA or the APA. As spelled out in detail in the Complaint, Plaintiffs allege that allowing the Defendants to ignore EPA policies and guidance without providing a reasoned explanation and supporting data not only allows the Defendants to violate the clear requirements of the Oak Ridge Reservation (ORR) Federal Facilities Agreement (FFA) and CERCLA § 120(a), it allows the Defendants to continue to act in a manner that is arbitrary, capricious, an abuse of discretion and not otherwise in accordance with law under well-established, extensive APA case law.

The Supreme Court has held that under the APA, "[i]n all cases agency action must be set aside if the action was `arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements. 5 U.S.C. §§ 706(2)(A),(B),(C),(D)." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414-15, 91 S. Ct. 814 (1971).

When reviewing agency actions under APA §706(2), the opinion in *Overton Park* states that "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Overton Park,* at p. 416. And,

"[t]hat task involves examining the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder,* 565 U.S. 42, 53, 132 S.Ct. 476 (2011). *See also Chelsea Industries., Inc. v. NLRB*, 285 F.3d 1073, 1075-76 (D.C. Cir. 2002)("The agency acts unreasonably if it departs from established policy without giving a reasoned explanation for the change..."); *Bellsouth Corp. v. FCC*, 162 F.3d 1215, 1221-22 (D.C. Cir. 1998) ("...the court will intervene to ensure that the agency has examined the relevant data and articulated a satisfactory explanation for its action. Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, we must undo its action."); *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (1st Cir. 1970), *cert. denied* 403 U.S. 923, 91 S. Ct. 2233, 29 L. Ed. 2d 701 (1971)("But an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.").

An agency's reasoned explanation justifying deviations from long-standing policy and guidance must be provided at the time decisions are made, not afterward. It is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015), citing *SEC v. Chenery Corp*., 318 U.S. 80, 87 (1943). Where a federal agency did not provide an adequate explanation for its actions:

> This court may "not attempt itself to make up for such deficiencies. We may not supply a reasoned basis for the agency's action that the agency itself has not given." State Farm, 463 U.S. at 43, 103 S.Ct. 2586 (internal quotation marks omitted); see SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Accordingly, the agency's failure of explanation renders the restart provision arbitrary and capricious.

*Owner-Operator Independent Drivers Association, Inc. v. Federal Motor Carrir Safety Administration*, 494 F. 3d 188, 206 (D.C. Cir. 2007). *See also Wedgewood Village Pharmacy v.*

*DEA*, 509 F.3d 541, 550 n.13 (D.C. Cir. 2007).        In *FCC v. Fox Television Stations*, 556 U.S.

502, 129 S.Ct. 1800, 1811 (2009), the Supreme Court ruled:

> To be sure, the requirement that an agency provide reasoned explanation for its action
> would ordinarily demand that it display awareness that it *is* changing position. An agency
> may not, for example, depart from a prior policy *sub silentio* or simply disregard rules
> that are still on the books.

(emphasis in original). In addition, "the agency must explain why "it now reject[s] the

considerations that led it to adopt that initial policy." *Fox,* at p. 1822. *See also Encino Motorcars,*

*LLC v. Navarro*, 136 S. Ct. 2117, 2126-27 (2016) ("the agency must at least display awareness

that it is changing position and show that there are good reasons for the new policy... an

unexplained inconsistency in agency policy is a reason for holding an interpretation to be an

arbitrary and capricious change from agency practice."). The Court also found that "conclusory

statements do not suffice to explain" an agency's decision. *See also Southwestern Bell Telephone*

*Co. v. FCC*, 28 F.3d 165, 169 n. 2 (D.C. Cir. 1994) ("Of course, the [agency] would have to

explain a deviation even from a policy statement.").

    Another recent Supreme Court decision includes language that further supports the

Plaintiff's challenges to the Defendants' actions here. In *Ohio v. EPA*, 144 S. Ct. 2040, 2053-55,

603 US 279 (2024), a case involving the Clean Air Act, the opinion states:

> An agency action qualifies as "arbitrary" or "capricious" if it is not "reasonable and
> reasonably explained." FCC v. Prometheus Radio Project, 592 U. S. 414, 423 (2021). In
> reviewing an agency's action under that standard, a court may not "'substitute its
> judgment for that of the agency.'" FCC v. Fox Television Stations, Inc., 556 U. S. 502,
> 513 (2009). But it must ensure, among other things, that the agency has offered "a
> satisfactory explanation for its action[,] including a rational connection between the facts
> found and the choice made." Motor Vehicle Mfrs. Assn. of United States, Inc. v. State
> Farm Mut. Automobile Ins. Co., 463 U. S. 29, 43 (1983) (internal quotation marks
> omitted). Accordingly, an agency cannot simply ignore "an important aspect of the
> problem." *Ibid.*

    Despite numerous and detailed comments submitted by the public, including Plaintiffs,

about the shortcomings of its approach to numerous remedy selection issues, including

wastewater effluent discharge limits, ion exchange treatment, waste acceptance criteria, and public participation procedures, the 2022 CERCLA ROD does not address them substantively and does nothing more than sidestep them.

Nothing in CERCLA authorizes EPA or DOE to deviate from long-standing, national policies and guidance documents without providing a reasoned explanation and supporting data and information justifying the deviations. Nothing in CERCLA authorizes EPA or DOE to ignore these relevant factors, or to not follow the procedural and substantive requirements in the NCP, which are also relevant factors. A site-specific CERCLA cleanup decision does not give federal agencies free license to ignore statutory provisions, their own regulations and long-standing, national policies and guidance. Nor does a sweetheart deal with regulators by itself provide a legal justification to do so.

Plaintiffs' Complaint alleges in detail the numerous deviations from EPA's long-standing, nationally published policy statements and guidance documents, and the real-world consequences of those deviations, *i.e.*, greater risk to human health measured in orders of magnitude. Plaintiffs' Complaint also alleges that EPA and DOE arbitrarily and capriciously have not provided any reasoned explanations or supporting data to justify those deviations. Under APA case law, these actions by EPA and DOE are arbitrary and capricious, and should be set aside by this Court.

### B.  Nothing in CERCLA authorizes EPA or DOE to ignore relevant factors.

Plaintiffs' Complaint alleges numerous instances where EPA and DOE have ignored relevant factors and procedural requirements in CERCLA and the NCP. Plaintiffs' claims go well beyond allegations of maladministration of interagency consultation and cooperation provisions; rather, they go to the heart of substantive statutory and regulatory obligations and requirements

imposed on PRPs like DOE for cleanup that have been ignored and violated, and are beyond the

dispensing power of EPA; *see Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 296 (1945)

("Insofar as Congress has made explicit statutory requirements, they must be observed and are

beyond the dispensing power of [executive branch] officials."). DOE, as a PRP, is responsible

and liable under CERCLA for cleaning up its property; DOE is not in charge of CERCLA's

administration.

In addition to *Bennett*, Plaintiff's position is further supported by *Weyerhaeuser Co. v.*

*U.S. Fish and Wildlife Service*, 586 U.S. ___, 139 S.Ct. 361 (2018). In that case, the Supreme

Court confirmed the availability of judicial review under the APA where a federal environmental

law's citizen suit provision does not provide a basis for challenging the agency's actions:

> The Administrative Procedure Act creates a "basic presumption of judicial review [for] one `suffering legal wrong because of agency action.'" *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (quoting 5 U.S.C. § 702). As we explained recently, "legal lapses and violations occur, and especially so when they have no consequence. That is why this Court has so long applied a strong presumption favoring judicial review of administrative action." *Mach Mining, LLC v. EEOC,* 575 U.S. ___, ___ _ ___, 135 S.Ct. 1645, 1652-1653, 191 L.Ed.2d 607 (2015). The presumption may be rebutted only if the relevant statute precludes review, 5 U.S.C. § 701(a)(1), or if the action is "committed to agency discretion by law," § 701(a)(2)…

> This Court has noted the "tension" between the prohibition of judicial review for actions "committed to agency discretion" and the command in § 706(2)(A) that courts set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Heckler v. Chaney,* 470 U.S. 821, 829, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). A court could never determine that an agency abused its discretion if all matters committed to agency discretion were unreviewable. To give effect to § 706(2)(A) and to honor the presumption of review, we have read the exception in § 701(a)(2) quite narrowly, restricting it to "those rare circumstances where the relevant statute is drawn *so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.*" *Lincoln v. Vigil,* 508 U.S. 182, 191, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993).

*Weyerhaeuser,* 139 S.Ct. at 370. (emphasis added). The Court's focus on an agency's abuse of

discretion is significant, since, unlike the APA, the standard of review in CERCLA § 113(j) (42

U.S.C. § 9613(j)) does not include "abuse of discretion." This difference between the APA and CERCLA alone makes a separate APA cause of action appropriate.

Where CERCLA expressly requires EPA and DOE to carry out their actions consistent with the NCP, the statute and implementing regulations provide meaningful standards for this Court to judge whether their actions are arbitrary and capricious, constitute abuses of discretion, or are not otherwise in accordance with law. As detailed in the Complaint, Plaintiffs have alleged a number of violations by EPA and DOE of meaningful standards in CERCLA and the NCP against which to judge the agencies' actions.

The *Weyerhaeuser* opinion goes on to state:

> Weyerhaeuser's claim is the familiar one in administrative law that *the agency did not appropriately consider all of the relevant factors that the statute sets forth to guide the agency in the exercise of its discretion*…This is the sort of claim that federal courts routinely assess when determining whether to set aside an agency decision as an abuse of discretion under § 706(2)(A).

*Id.* at 371 (emphasis added).

Similarly, the Plaintiffs in this case have alleged in detail in the Complaint that EPA and DOE have ignored clear standards and requirements in CERCLA and the NCP, have failed to follow the mandated procedures for decision making, and have failed to consider all the relevant factors in the statute, regulations, and long-standing EPA national policy positions, interpretative rules, and published guidance.[6]

---

[6] CERCLA § 120(a)(2) requires DOE to follow EPA's longstanding policy positions, interpretative rules, and published guidance, making them relevant factors and meaningful standards for purpose of judicial review: "All guidelines, rules, regulations, and criteria which are applicable … to remedial actions at such facilities shall also be applicable to facilities which are owned or operated by a department, agency, or instrumentality of the United States in the same manner and to the extent as such guidelines, rules, regulations, and criteria are applicable to other facilities. No department, agency, or instrumentality of the United States may adopt or utilize any such guidelines, rules, regulations, or criteria which are inconsistent with the guidelines, rules, regulations, and criteria established by the Administrator under this chapter." 42 U.S.C. § 9620(a)(2).

As alleged in the Complaint, EPA and DOE acted arbitrarily and capriciously and abused their discretion when, among other actions, they: 1) improperly excluded Clean Water Act requirements from the remedy selection process; 2) selected a remedial action that does not use the best available treatment technology which is readily available and practicable; 3) used an outdated Fish Consumption Rate; and, 4) used a lifetime exposure duration of 26 years instead of 70 years.

### C. The Failures by EPA and DOE to follow the NCP were unlawful and were actions "not in accordance with law."

Finally, Plaintiffs' Complaint alleges numerous actions taken by EPA and DOE which violated requirements in the NCP, and as such were not in accordance with law. An agency is bound to follow its own regulations, and failure to do so is unlawful. *See Bradley v. Weinberger*, 483 F.2d 410, 414 n.2 (1st Cir. 1973) ("Agency action not in accord with regulations is not in accord with law.").

## III. This Court is the proper venue for this action.

Defendants argue that "this action should proceed, if at all, in the Eastern District of Tennessee, where the alleged CERCLA violations occurred." Def. Mot. at p. 22.

On the contrary, this Court is the proper venue for this action, based on the clear language of CERCLA § 310(b), 42 U.S.C. § 9659(b), which states:

(1) Actions under subsection (a)(1)

Any action under subsection (a)(1) of this section shall be brought in the district court for the district in which the alleged violation occurred.

(2) Actions under subsection (a)(2)

Any action brought under subsection (a)(2) of this section may be brought in the United States District Court for the District of Columbia.

Plaintiffs' Complaint seeks relief under both CERCLA § 310(a)(1) and (a)(2) for violations which occurred in the District of Columbia. Compl. ¶ ¶ 267 – 280.

The plain language of CERCLA does not support the Defendants' argument since the violations Plaintiffs have alleged in detail in their Complaint occurred in the District of Columbia by agency officials in the Headquarters offices of DOE and EPA, including two former EPA Administrators.

As explained in greater detail in Plaintiffs' Complaint, ORR has been placed on the National Priorities List (NPL) pursuant to CERCLA. As required by CERCLA § 120 (42 U.S.C. § 9620), the Defendants, together with the State of Tennessee, have signed an interagency agreement, the ORR FFA.[7] The ORR FFA establishes EPA's oversight role of DOE's CERCLA cleanup at ORR. With respect to one part of the ORR CERCLA cleanup, the State and EPA initiated a dispute over DOE's approach to wastewater management activities. Consistent with the FFA's provisions, former EPA Administrator Andrew Wheeler resolved this dispute and issued a final dispute resolution decision in December, 2020 (Wheeler Decision).

To implement the Wheeler Decision, former EPA Administrator Michael Regan signed a CERCLA ROD in September, 2022, consistent with CERCLA § 120(e)(4)[8] and the NCP.[9] The

---

[7] The State is not a party to this action, and the Plaintiffs' Complaint contains no allegations regarding the State.

[8] CERCLA § 120(e)(4) states:

Contents of agreement. Each interagency agreement under this subsection shall include, but shall not be limited to, each of the following: (A) A review of alternative remedial actions and selection of a remedial action by the head of the relevant department, agency, or instrumentality and the Administrator or, if unable to reach agreement on selection of a remedial action, selection by the Administrator. (B) A schedule for the completion of each such remedial action. (C) Arrangements for long-term operation and maintenance of the facility.

[9] 40 CFR § 300.430(f)(4)(iii) states:

The process for selection of a remedial action at a federal facility on the NPL, pursuant to CERCLA section 120, shall entail: (A) Joint selection of remedial action by the head of the relevant department, agency, or instrumentality and EPA; or (B) If mutual agreement on the remedy is not reached, selection of the remedy is made by EPA.

2022 CERCLA ROD signed by former Administrator Regan makes numerous references to the fact that it is based on and follows the Wheeler Decision. By signing the 2022 CERCLA ROD, former EPA Administrator Regan in effect reaffirmed the interpretations and determinations made by his predecessor.

The Plaintiffs' Complaint alleges that the Wheeler Decision and the 2022 CERCLA ROD, both signed by EPA Administrators working with their DOE HQ counterparts violate requirements in CERCLA and the NCP, violate non-discretionary duties in CERCLA and the NCP, violate the express terms of the FFA, and are arbitrary, capricious, an abuse of discretion and not otherwise in accordance with law. The Plaintiffs' Complaint also alleges that these violations are documented in final agency decisions governing the ORR CERCLA cleanup – the 2020 Wheeler Decision and the 2022 CERCLA ROD – which were signed and issued by two former EPA Administrators. These decision documents were prepared with the active participation of DOE and EPA Headquarters officials, all residing in the District of Columbia for purposes of CERCLA § 310(a)(1) and (2), and CERCLA § 310(b).

What is important for purposes of determining venue in this case is *where* these violations carried out by two EPA Administrators working with their DOE HQ counterparts took place; they took place in the District of Columbia, not in Tennessee.

Since this is an administrative record review case pursuant to CERCLA § 113(j) (42 U.S.C. § 9613(j)), there is no reason or benefit in transferring venue to the Eastern District of Tennessee. None of the relevant facts took place in Tennessee.

Plaintiffs are aware of interactions and scheduled meetings involving high level officials from EPA and DOE Headquarters offices in connection with the preparation and issuance of the Wheeler Decision and the 2022 CERCLA ROD. *See e.g.*, Letter from Bill Cooper, General

Counsel, U.S. Department of Energy to Andrew Wheeler, EPA Administrator, dated August 26, 2019, providing DOE's "Supplemental Response Regarding Oak Ridge Reservation Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Dispute.[10]  If Defendants dispute the existence of these interactions and meetings, Plaintiffs believe it would be helpful to the resolution of this Motion to conduct limited discovery on this point to firmly establish that this Court is the correct venue for this lawsuit.

## CONCLUSION

For the foregoing reasons, Plaintiffs request this Court to deny the Defendants' Motion to Dismiss in its entirety. Based on the foregoing, this Court is the proper venue for this action pursuant to CERCLA § 310(b), and have satisfied their burden of establishing that venue is proper in this Court. *McCain v. Bank of Am.,* 13 F. Supp. 3d 45, 51 (D.D.C. 2014) (BAH). As a result, Plaintiffs respectfully request that this Court deny the Defendants' motion for change of venue.

Should the Court find merit in any of the Defendants' arguments, Plaintiffs respectfully request leave to amend the Complaint.

Respectfully submitted,

*/s/ Terry J. Lodge*　　　　　　　　　　*/s/ Wallace L. Taylor*
Terry J. Lodge, Esq.　　　　　　　　　Wallace L. Taylor
316 N. Michigan St., Ste. 520　　　　　4403 1st Ave. S.E., Suite 402
Toledo, OH 43604-5627　　　　　　　Cedar Rapids, Iowa 52402
tjlodge50@yahoo.com　　　　　　　　wtaylorlaw@aol.com

Co-counsel for Plaintiffs

---

[10] Available at https://www.tn.gov/content/dam/tn/environment/remediation/documents/orr/emdf-docs/rem_emdf-ffs-formal-dispute-doe_08-26-2019.pdf.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th of October, 2025, I deposited the foregoing

"PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO

DEFENDANTS' MOTION FOR PARTIAL DISMISSAL" into the electronic case filing system

maintained by the Court, and that according to system protocols it was served upon all counsel of

record.

*/s/  Terry J. Lodge*
Terry J. Lodge
Co-counsel for Plaintiffs