# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOUNDATION FOR GLOBAL SUSTAINABILITY; TENNESSEE CITIZENS FOR WILDERNESS PLANNING; TENNESSEE SCENIC RIVERS ASSOCIATION; NUCLEAR INFORMATION AND RESOURCE SERVICE; COMMUNITY DEFENSE OF EAST TENNESSEE; and SOWING JUSTICE, | Civil No. 1:25-02218 |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL AND TO TRANSFER VENUE** |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and UNITED STATES DEPARTMENT OF ENERGY, | |
| Defendants. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................... 1

    I.     The Court Should Dismiss Claim 3. ....................................................... 2

         A.     The Agencies Selected Remedial Actions They Determined
                to Be Appropriate, Necessary, and Protective, and Plaintiffs
                Do Not Assert Otherwise. ............................................................. 4

         B.     The Agencies Selected Remedial Actions that Use
                Treatment Technology Consistent with CERCLA Section
                121(b) and Plaintiffs Do Not Allege Otherwise. ....................... 11

         C.     The Agencies Published a Proposed Plan. .................................. 12

    II.    Plaintiffs' Opposition Makes Clear the Eastern District of
         Tennessee Is the Proper Venue. ........................................................... 13

    III.   The Merits of Plaintiffs' APA Claim Are Not Currently Before the
         Court. ................................................................................................... 15

CONCLUSION ..................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................................................4

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................................4

*Bennett v. Spear,*
  520 U.S. 154 (1997) ..........................................................................................6, 7, 8

*Benzman v. Whitman,*
  523 F.3d 119 (2d Cir. 2008) ....................................................................................10

*Food & Water Watch v. EPA,*
  5 F. Supp. 3d 62 (D.D.C. 2013) ................................................................................6

*Frey v. EPA,*
  751 F.3d 461 (7th Cir. 2014) ..................................................................................6, 7

*Greenaction for Health & Env't Just. v. United States Dep't of Navy,*
  No. 24-CV-03899-VC, 2025 WL 808079 (N.D. Cal. Mar. 13, 2025) ..............8, 9, 15

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,*
  484 U.S. 49 (1987) ....................................................................................................5

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004) ..................................................................................................10

*Quarles v. United States ex rel. Bureau of Indian Affs.,*
  No. 00-CV-0913, 2005 WL 2789211 (N.D. Okla. Sept. 28, 2005) ..........................10

*Scott v. City of Hammond,*
  741 F.2d 992, (7th Cir. 1984) ....................................................................................8

*Sierra Club v. Johnson,*
  623 F. Supp. 2d. 31, 37 (D.D.C. 2009) ..............................................................15, 16

*Sierra Club v. Thomas,*
  828 F.2d 783 (D.C. Cir. 1987) ..................................................................................8

*United States v. Sensient Colors, Inc.,*
  No. CIV. 07-1275 (JHR), 2009 WL 394317 (D.N.J. Feb. 13, 2009), *aff'd*, 649 F. Supp. 2d 309
  (D.N.J. 2009) ......................................................................................................8, 10

**Statutes**

16 U.S.C. § 1540(g)(1) ................................................................................................8

16 U.S.C. § 1540(g)(1)(C) ........................................................................................7, 8

42 U.S.C. § 9613(h) ...................................................................................................1

42 U.S.C. § 9613(k)(2)(B) ...........................................................................................12

42 U.S.C. § 9617(a) ....................................................................................................12

42 U.S.C. § 9621(a) ...................................................................................................5, 9

42 U.S.C. § 9621(b) ...................................................................................................4, 5

42 U.S.C. § 9659(a)(1) ...........................................................................................1, 2, 13

42 U.S.C. § 9659(a)(2) ..............................................................................................7, 8

42 U.S.C. § 9659(b)(1) .............................................................................................12, 13

42 U.S.C. § 9659(c) ....................................................................................................8

42 U.S.C. § 9659(d)(1) ...............................................................................................14

**Code of Federal Regulations**

40 C.F.R. § 300.1 ........................................................................................................9

40 C.F.R. § 300.400(i)(3)............................................................................................10

40 C.F.R. §§ 300.400-300.440....................................................................................10

**Federal Register**

Exec. Order No. 12580, 52 Fed. Reg. 2923 (Jan. 23, 1987)..........................................4

Defendants the United States Environmental Protection Agency ("EPA") and the United States Department of Energy ("DOE") (collectively "Defendants" or the "Agencies") submit this reply in support of their motion to dismiss Count 3 of the Complaint and transfer all claims to the Eastern District of Tennessee.

## INTRODUCTION

DOE, with oversight from EPA and the State of Tennessee, is cleaning up the Oak Ridge Reservation site (the "Site") near Knoxville, Tennessee. The crux of Plaintiffs' Complaint is that one element of the Agencies' comprehensive cleanup plan violates the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) and the Administrative Procedure Act (APA) because it does not require the use of an ion exchange resin technology to treat wastewater discharging from one existing and one proposed landfill at the Site. Plaintiffs assert four claims. Claim 1 arises under CERCLA section 310(a)(1), 42 U.S.C. § 9659(a)(1), for alleged violations of CERCLA's "standard[s], regulation[s], condition[s], [and] requirement[s]"; Claim 2 also arises under CERCLA section 310(a)(1), 42 U.S.C. § 9659(a)(1), for alleged violations of the Site's federal facility agreement; and Claim 4 arises under the APA. Defendants' motion for partial dismissal does not address those claims. Defendants only seek dismissal of Claim 3.[1] With respect to Claims 1, 2, and 4, Defendants seek to transfer them to the proper venue, the Eastern District of Tennessee.

In Claim 3, Plaintiffs characterize the same allegations underlying Claims 1, 2, and 4, as a non-discretionary duty claim arising under CERCLA section 310(a)(1), 42 U.S.C. §

---

[1] In filing their motion for partial dismissal and to transfer, Defendants do not concede that Plaintiffs' remining claims are valid or that they fall under the exceptions in CERCLA section 113(h), 42 U.S.C. § 9613(h). Defendants reserve all their rights to challenge those claims in the proper venue.

9659(a)(1), in an apparent attempt to secure venue in this District. In essence, Plaintiffs argue that the Agencies had a mandatory duty to select ion exchange resin technology to treat wastewater at the Site. That claim fails because CERCLA does not impose a nondiscretionary duty on the Agencies to select a particular cleanup technology. Rather, CERCLA gives the Agencies discretion in making that determination. Nondiscretionary duty claims are available only to compel performance of a discrete, required action with no room for discretion, not to seek review of discretionary decision-making. Selecting a remedial action involves exercising discretion and making highly technical judgments. As detailed in our opening brief, the "nondiscretionary duties" Plaintiffs allege fail to state a claim because those duties do not exist and the Agencies have satisfied any nondiscretionary duties under CERCLA.

Plaintiffs' opposition brief fails to save Claim 3. Plaintiffs do not identify any case law that supports their position, and their attempts to distinguish the cases contrary to their position fall short. Plaintiffs also attempt to distract from their pleading failure by arguing the merits of their APA claim, which is inappropriate at this juncture. Finally, Plaintiffs' opposition brief demonstrates that this case belongs in the Eastern District of Tennessee, consistent with their notice of intent to sue and as required by CERCLA's special venue provision.

## I.  The Court Should Dismiss Claim 3.

Plaintiffs' Claim 3 is fundamentally a challenge to one narrow aspect of the cleanup at the Site, involving the selection of the appropriate treatment technology for certain wastewater discharges. It is not a challenge for failure to perform a nondiscretionary duty, and it is not cognizable and must be dismissed as a matter of law. Count 3 attempts to contort the facts underlying Plaintiffs' CERCLA section 310(a)(1) claims (i.e., Counts 1 and 2) to allege that the Agencies have not complied with mandatory duties under CERCLA. But Count 3 must be

dismissed because Plaintiffs have failed to identify any failure to carry out a duty that is nondiscretionary under CERCLA.

Contrary to Plaintiffs' assertion, in moving to dismiss Claim 3, Defendants have not asked the Court to defer to their interpretation of CERCLA. *See* Pls.' Mem. of Points and Auth. in Opp. to Def. Mot. for Partial Dismissal ("Opp."), Dkt. No. 13 at 10. Rather, Defendants ask the Court to apply the statute's plain language and long settled judicial interpretations thereof, which will result in the dismissal of Count 3.

Plaintiffs assert that their Complaint alleges that Defendants failed to carry out the following purported nondiscretionary duties:

> (1) the requirement to select remedies which ensure protectiveness of human health and the environment (Compl. ¶¶ 72, 73);
> (2) the requirement to select remedies which utilize treatment to the maximum extent practicable (Compl. ¶ 72) –in this case ion exchange resin treatment technology – in the 2022 CERCLA [ROD];
> (3) the requirement to explain why treatment to the maximum extent practicable was not selected (Compl. ¶ 72) in the 2022 CERCLA ROD; and
> (4) the requirement to publish a proposed plan (Compl. ¶ 76) for effluent discharge limits, which the 2022 CERCLA ROD states is an essential part of the cleanup, after the Wheeler decision was issued.

Opp. at 11.[2] Each of the Complaint paragraphs Plaintiffs cite (Compl. ¶¶ 72, 73, and 76) only quotes portions of CERCLA. Those paragraphs do not contain any factual allegations. Similarly, Plaintiffs repeatedly assert in their opposition brief that their Complaint identifies many "shalls" in CERCLA, as a basis for the Court to accept their nondiscretionary duty claim. *Id.* at 11, 19, 20. But even if the Court were to assume that the cited portions of CERCLA created nondiscretionary duties (a position with which Defendants do not concede, especially as those

---

[2] In their opposition, Plaintiffs do not respond to Defendants' argument that the selection of Applicable or Relevant and Appropriate Requirements ("ARARs") for the cleanup is discretionary and that Defendants have conducted all necessary five-year reviews.

statutory provisions are characterized by Plaintiffs), Plaintiffs' bare citation to the statute in the Complaint is insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must also allege that Defendants failed to perform such duties, which they do not and cannot do so here because the Agencies have carried out any nondiscretionary duties.

### A. The Agencies Selected Remedial Actions They Determined to Be Appropriate, Necessary, and Protective, and Plaintiffs Do Not Assert Otherwise.

Plaintiffs' claim that the Agencies failed to perform a nondiscretionary duty to "ensure protectiveness of human health and the environment," Opp. at 11, fails because the Agencies' relevant duty is to select remedies that they determine are protective of human health and the environment. In support of their claim, Plaintiffs cite CERCLA section 121(b), 42 U.S.C. § 9621(b), which states: "The President shall select a remedial action that is protective of human health and the environment, that is cost effective, and that utilizes permanent solutions and alternative treatment technologies or resource recovery technologies *to the maximum extent practicable*."[3] 42 U.S.C. § 9621(b) (emphasis added). Plaintiffs first assert that the use of the word "shall" in section 121(b) creates a nondiscretionary duty. Opp. at 10. Defendants do not necessarily disagree, though Plaintiffs mistake the scope of that duty in two respects. First, Plaintiffs read it out of context. The preceding provision of the statute, titled "Selection of remedial action," states that "[t]he President shall select *appropriate* remedial actions *determined*

---

[3] The President has delegated to DOE the authority to conduct CERCLA response actions at its facilities and to EPA the authority to conduct response actions generally. Exec. Order No. 12580 § 2(d), (g), 52 Fed. Reg. 2923 (Jan. 23, 1987).

to be necessary to be carried out under section 9604 . . . which are in accordance with this section and, *to the extent practicable*, the national contingency plan, and which provide for cost-effective response." 42 U.S.C. § 9621(a) (emphasis added). Thus, while the President may have a duty to select a remedial action, the statute leaves discretion to the President to determine the appropriateness, necessity, and practicability of the remedial action. Second, that discretion is likewise reflected in section 121(b), which addresses "General rules" for selecting a remedy. That provision conditions its "shall" command with "to the maximum extent practicable," and even allows the President to select a remedial action that is "not appropriate for a preference under this subsection," so long as the President explains the deviation. 42 U.S.C. § 9621(b). Thus, Defendants do not dispute that CERCLA creates a nondiscretionary duty to select a remedial action that *the President determines* to be appropriate, necessary, protective of human health and the environment, and cost effective.

Critically, Plaintiffs do not allege that the Agencies failed to select a remedial action that the Agencies determined is protective. Rather, Plaintiffs argue that, because the Agencies' selected remedy does not require wastewater be treated with ion exchange resin technology, the remedy does not "ensure protectiveness of human health and the environment." Compl. ¶ 279. But CERCLA does not require the Agencies to select any particular remedy to "ensure[] protectiveness," and nothing section 121(a) or (b) imposes a *mandatory* duty on the Agencies to take any specific remedial action to protect human health and the environment. As Plaintiffs point out, "[i]t is well settled that 'the starting point for interpreting a statute is the language of the statue itself." Opp. at 10 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 56 (1987)). But it is Plaintiffs—not Defendants—who ask the Court to read "words or elements into a statute that do not appear on its face." *Id.*

It is undisputed that the Agencies selected a remedy that they determined to be protective, and that the selected remedy requires the use of technology to treat wastewater. *See* Excerpts of Record of Decision, Oak Ridge Reservation Waste Disposal at the Environmental Management Disposal Facility, Oak Ridge, Tennessee (Sep. 2022)[4] ("EMDF ROD"), attached as Exhibit 1, at 2-68, 2-83.[5] Specifically, the selected remedy for the Site's landfill wastewater "for both radionuclides and non-radionuclides, is primary treatment of all wastewaters, with secondary treatment when required to meet cleanup goals." *Id.* at 2-68. The Record of Decision further states that "[t]he primary wastewater treatment will be a flocculation and chemical precipitation process." *Id.* Plaintiffs disagree with the type of treatment technology selected, preferring ion exchange resin technology over flocculation and chemical precipitation. But the actual technology the Agencies chose is a matter of technical expertise within the Agencies' discretion that cannot be challenged via a citizen suit under 42 U.S.C. § 9659(a)(2). *See Bennett v. Spear*, 520 U.S. 154, 172 (1997).

Contrary to Plaintiffs' assertions, *Frey v. EPA*, 751 F.3d 461, 470 (7th Cir. 2014), does not support their position. In *Frey*, the court stated, "EPA had a non-discretionary duty to select remedial actions that are protective of human health and the environment," but it acknowledged that it could "review only whether the EPA determined that, *in its estimation*, [the remedy] was protective of human health and the environment." *Id.* (emphasis added). The court emphasized that "[its] review of that determination is deferential," and found "that [i]t was clear that the EPA made the required determination." *Id.* at 471. And the court in *Frey* explicitly held that CERCLA

---

[4] The full version of the ROD is available at
https://doeic.science.energy.gov/uploads/F.0615.031.0263.pdf.

[5] In evaluating a 12(b)(1) motion, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record . . . ." *Food & Water Watch v. EPA*, 5 F. Supp. 3d 62, 72 (D.D.C. 2013).

did not require EPA to select the "most protective remedy." *Id.* Thus, even accepting *Frey's* statement that the Agencies have a non-discretionary duty to select remedial actions that they determine are protective of human health and the environment, Plaintiffs' Complaint fails to state a claim because Plaintiffs do not allege that the Agencies failed to make such a determination. Rather, they assert that the Agencies' selected remedy does not "ensure protectiveness" because it does not include ion exchange resin treatment technology. Compl. ¶ 279. But the Agencies are "not required to" select what Plaintiffs deem to be the most protective remedy nor any particular treatment technology. *See id.*

After citing *Frey* as purportedly supporting their position, but recognizing that it does not, Plaintiffs attempt to distinguish it by arguing that *Frey* incorrectly applied *Bennett v. Spear*, 520 U.S. 154, 172 (1997). Opp. at 13. Plaintiffs' attempt to distinguish *Frey*, however, is illusory. In *Bennett*, the Supreme Court considered the citizen-suit provision in the Endangered Species Act (ESA). In interpreting the CERCLA citizen-suit provision, 42 U.S.C. § 9659(a)(2), *Frey* applied *Bennett's* holding that citizen suit nondiscretionary duty claims do not permit courts to review the substance of agency actions, noting that the two statutes had "identical language." *Frey*, 751 F.3d at 469. Plaintiffs argue that the *Frye* court erred because the ESA's citizen-suit provision is not identical to CERCLA's. Opp. at 13. That argument is unavailing. The "identical language" to which the *Frey* court referred was "failure to perform an act or duty . . . which is not discretionary," which is indeed identical between the citizen-suit provisions in the ESA and CERCLA. *Compare* 42 U.S.C. § 9659(a)(2) etc., with 16 U.S.C. § 1540(g)(1)(C).

Plaintiffs correctly identify one difference between the two citizen-suit provisions in that the CERCLA provision cross-references 42 U.S.C. § 9620, which relates to federal facilities. Opp. at 13. But that difference misses the larger point: the citizen-suit provisions in CERCLA

and the ESA limit judicial review to determining whether the agency fulfilled a nondiscretionary

duty. *Compare* 42 U.S.C. § 9659(a)(2), *with* 16 U.S.C. § 1540(g)(1)(C). And they limit relief to

an order directing the agency to perform the duty. 42 U.S.C. § 9659(c); 16 U.S.C. § 1540(g)(1).

They do not permit a substantive review of an agency's discretionary decision-making, as the

agency maintains "discretion as to the substance of the ultimate decision." *Bennett*, 520 U.S. at

172; *accord Sierra Club v. Thomas*, 828 F.2d 783, 792 (D.C. Cir. 1987) ("We long ago rejected,

. . . , the convoluted notion that EPA is under a nondiscretionary duty . . . not to abuse its

discretion."); *Scott v. City of Hammond,* 741 F.2d 992, 995 (7th Cir. 1984) ("[T]he *content* of

water quality standards cannot ordinarily be challenged through a citizen's suit. An

administrator's duty to approve or promulgate some water quality standards might be

'nondiscretionary' within the meaning of [the citizen-suit provision], but the *content* of the

standards is certainly at least somewhat discretionary with the EPA.").

Plaintiffs' attempts to distinguish *Greenaction for Health & Environmental Justice v.

United States Department of the Navy*, No. 24-CV-03899-VC, 2025 WL 808079, at *2 (N.D.

Cal. Mar. 13, 2025) and *United States v. Sensient Colors, Inc.*, No. CIV. 07-1275 (JHR), 2009

WL 394317, at *9 (D.N.J. Feb. 13, 2009), *aff'd*, 649 F. Supp. 2d 309 (D.N.J. 2009), also fail.

Essentially, Plaintiffs argue that the court should disregard those cases because they did not

present facts identical to those here. Opp. at 14-15. But those courts clearly held a plaintiff

cannot use a nondiscretionary duty claim cannot be used to challenge the manner in which an

agency carries out its duties. The factual circumstances Plaintiffs distinguish do not detract from

the unrebutted legal principle stated in those cases.

For instance, in *Greenaction*, the plaintiffs alleged that the Navy "failed to perform a

nondiscretionary duty to select remedies that are protective of human health and the

environment," which is precisely the claim Plaintiffs make here. 2025 WL 808079, at *2. In dismissing that claim with prejudice, the court held that the nondiscretionary duty claim failed because the Navy's "relevant nondiscretionary duty" was only to select remedies it determined were protective. *Id.* "The actual content of the remedies chosen is a matter of discretion, and cannot be challenged via a citizen suit brought under 42 U.S.C. § 9659(a)(2)." *Id.* That holding is directly on point. Moreover, the plaintiffs in *Greenaction*, like Plaintiffs here, asserted that the Navy violated a federal facility agreement by allegedly failing to abide by EPA guidance documents. In response, the court held "[g]uidance documents are generally not enforceable" but noted that, if properly plead, such claims could proceed under 42 U.S.C. § 9659(a)(1) (i.e., for violations of CERCLA, but *not* as non-discretionary duty claims). Here, Defendants have not sought dismissal of Plaintiffs' similar allegations arising under 42 U.S.C. § 9659(a)(1) (i.e., Count 2), but, as the court held in *Greenaction*, such allegations *do not* support a nondiscretionary duty claim under § 9659(a)(2), and nothing in Plaintiffs' opposition brief demonstrates otherwise.

Plaintiffs' opposition also fails to establish that the National Contingency Plan ("NCP") imposes mandatory duties on Defendants.[6] First, with respect to the language of the statute itself, CERCLA section 121(a) directs the President to "select *appropriate* remedial actions . . . which are in accordance with this section and, *to the extent practicable*, the national contingency plan." 42 U.S.C. § 9621(a) (emphasis added). Nondiscretionary duties are limited to clear-cut mandatory duties. As the Supreme Court has explained, nondiscretionary duty claims are akin to the traditional remedy of mandamus and therefore are limited to enforcement of a "specific,

---

[6] The NCP "provide[s] the organizational structure and procedures" for responding to releases of hazardous substances, pollutants, or contaminants. 40 C.F.R. § 300.1.

unequivocal command" that is clear on the statute's face. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (internal quotations omitted). The inclusion of "appropriate" and "to the extent practicable" make clear that the President has discretion in selecting remedies that comply with the NCP. *See United States v. Sensient Colors, Inc.*, 2009 WL 394317, at *9 (holding that a regulation "is plainly discretionary on its face because the regulation qualifies the EPA's duty 'to the extent practicable'").

Additionally, the NCP regulations Plaintiffs cite as the source of mandatory duties explicitly provide that actions by the government in implementing the NCP "are discretionary governmental functions," which means that they are not mandatory. 40 C.F.R. § 300.400(i)(3). Contrary to Plaintiffs' unsupported assertion, 40 C.F.R. § 300.400(i)(3) is not limited to the scope of the Federal Tort Claims Act. *See* Opp. at 18. Indeed, courts have cited that section of the NCP regulations in rejecting claims that failure to adhere to the NCP constitutes failure to comply with a CERCLA nondiscretionary duty. *See Quarles v. United States. ex rel. Bureau of Indian Affs.*, No. 00-CV-0913, 2005 WL 2789211, at *13 (N.D. Okla. Sep. 28, 2005) (relying on language of 40 C.F.R. § 300.400 in dismissing CERCLA claim alleging that the NCP regulations create a nondiscretionary duty to create an administrative record); *United States v. Sensient Colors, Inc.*, 2009 WL 394317, at *9 (same). And in *Benzman v. Whitman,* 523 F.3d 119, 131 (2d Cir. 2008), the Second Circuit held that "section 300.400 renders any actions or failures-to-act pursuant to Subpart E [of the NCP regulations] discretionary and therefore unreviewable under section 706(1) of the APA." Plaintiffs' attempt to distinguish *Benzman* because it dealt with a removal action rather than a remedial action, again, falls short because "Subpart E" of the NCP, which is referenced in 40 C.F.R. § 300.400 and cited by the *Benzman* court, sets forth procedures for selecting *both* removal and remedial actions. *See* 40 C.F.R. §§ 300.400-300.440.

Finally, Contrary to Plaintiffs' suggestion, Defendants are not asserting that they must only "say they have" selected a remedy that "is protective" and that "uses treatment technology" to avoid a citizen suit. Opp. at 16. As noted above, and described again below, the record shows that the Agencies have, in fact, selected treatment technology for wastewater that they determined is protective. *See, e.g.*, Ex. 1, EMDF ROD, at 2-68, 2-83 – 2-84. But Plaintiffs, in asserting a nondiscretionary duty claim, must do more than say Defendants have not done *something*; rather they must: (1) identify a duty that is not discretionary and (2) make factual allegations that support their claim that Defendants failed to carry out that duty. Plaintiffs have not done that here.

### B. The Agencies Selected Remedial Actions that Use Treatment Technology Consistent with CERCLA Section 121(b) and Plaintiffs Do Not Allege Otherwise.

Plaintiffs' second and third alleged non-discretionary duties fail to state a claim for relief because the Agencies selected a remedial action that uses treatment technology to the maximum extent practicable to reduce hazardous substances in the landfills' wastewater. *See, e.g.*, Ex. 1, EMDF ROD, at 2-68, 2-83 – 2-84. In their opposition, Plaintiffs attempt to recharacterize the statute to claim that Defendants failed to comply with a "requirement to select remedies which utilize treatment to the maximum extent practicable (Compl. ¶ 72) – in this case ion exchange resin treatment technology – in the 2022 CERCLA [ROD]" and a "requirement to explain why treatment to the maximum extent practicable was not selected (Compl. ¶ 72)." Opp. at 11.

Neither allegation identifies a failure to carry out a nondiscretionary duty. CERCLA section 121(b)(1), provides that "[r]emedial actions in which treatment which permanently and significantly reduces the volume, toxicity or mobility of the hazardous substances, pollutants, and contaminants is a principal element, are to be preferred over remedial actions not involving

such treatment." 42 U.S.C. § 9621(b)(1). That section further provides that "the President shall select a remedial action that . . . utilizes permanent solutions and alternative treatment technologies or resource recovery technologies *to the maximum extent practicable*. If the President selects a remedial action not appropriate for a preference under this subsection, the President shall publish an explanation as to why a remedial action involving such reductions was not selected." *Id.* (emphasis added). In their Complaint, Plaintiffs do not assert that the Agencies failed to select a remedy that uses treatment that permanently and significantly reduces hazardous substances (and they cannot make such an allegation because the selected remedial action does require such treatment). *See* Ex. 1, EMDF ROD at 2-68 (stating that the "primary wastewater treatment will be a flocculation and chemical precipitation process"). Instead, Plaintiffs simply disagree with the treatment the Agencies selected, which is a discretionary choice. *See United States v. Sensient Colors, Inc.*, 2009 WL 394317, at *9 (holding that a regulation "is plainly discretionary on its face because the regulation qualifies the EPA's duty 'to the extent practicable'"). And an explanation is only required if the selected remedial action does not use treatment, which, again, is not the case here. *See* 42 U.S.C. § 9621(b)(1). As such, Plaintiffs fail to allege noncompliance with a nondiscretionary duty as it relates to the Agencies' selection of the treatment technology for the landfills' wastewater.

## C.  The Agencies Published a Proposed Plan.

As to Plaintiffs' fourth alleged non-discretionary duty, the Agencies published the required proposed plan. CERCLA sections 113(k) and 117 requires that the Agencies publish a "brief analysis of the proposed plan" for remedial action and make it available to the public. 42 U.S.C. §§ 9613(k)(2)(B), 9617(a). In their Complaint, Plaintiffs allege that "DOE published [its] proposed plan for the [Proposed Landfill] and made it available to the public." Compl. ¶ 46. But

12

now, Plaintiffs seek to add requirements to CERCLA that do not exist by asserting that the Agencies had an additional obligation to specifically publish another "proposed plan . . . for effluent discharge limits, which the 2022 CERCLA ROD states is an essential part of the cleanup, after the Wheeler decision was issued." Opp. at 11. CERCLA requires publication of a "brief analysis" of the proposed plan when the plan is made available to the public, and nothing more. DOE complied with that requirement, and Plaintiffs cannot and do not claim otherwise.

In sum, Plaintiffs disagree with the Agencies' ongoing remedial action at the Site. They allege in Counts 1 and 2 that the remedial action violates CERCLA and, in Count 4, allege that it violates the APA. In Count 3, Plaintiffs reframe those same allegations as the failure to carry out nondiscretionary duties, in an apparent gambit to secure venue in this District. But, as demonstrated above and in our opening brief, Plaintiffs have not alleged any failure of the Agencies to comply with a nondiscretionary duty under CERCLA, and, thus, Claim 3 must be dismissed. Additionally, granting Plaintiffs leave to amend the complaint, as they requested in their opposition brief, would be futile, because, as demonstrated above, Defendants have fulfilled any relevant nondiscretionary duties. Indeed, if Plaintiffs had a legitimate nondiscretionary duty claim to assert, they could have moved to amend upon reviewing Defendants' motion for partial dismissal, yet they have not done so.

## II.    Plaintiffs' Opposition Makes Clear the Eastern District of Tennessee Is the Proper Venue.

Claims 1 and 2 arise under CERCLA section 310(a)(1), 42 U.S.C. § 9659(a)(1). Actions arising under 310(a)(1) "*shall* be brought in the district court for the district in which the alleged violation occurred." *Id*. § 9659(b)(1) (emphasis added). Here, the CERCLA and federal facility agreement violations Plaintiffs allege in Counts 1 and 2 occurred at the Oak Ridge Reservation Site because that is where the CERCLA remedy is ongoing. Plaintiffs admit that the CERCLA

remedy is occurring in Tennessee and that the Tennessee Department of Environment and Conservation is a party to the federal facility agreement. Opp. at 6. Plaintiffs also admit they notified the Attorney General of Tennessee of their intent to sue, *id.*, as required by CERCLA, 42 U.S.C. § 9659(d)(1). That provision of the statute requires that a complainant give notice of the alleged CERCLA violations to the "State in which the alleged violation occurs." *Id.* Plaintiffs also concede in their opposition brief that Tennessee is an interested party. Opp. at 6.

Notwithstanding the foregoing, Plaintiffs now argue that the violations occurred in the District of Columbia solely because the EPA Administrator who works out of the Agency's headquarters' offices in D.C. was involved in decisions related to CERCLA response actions that is *occurring in Tennessee. Id.* at 21. Yet, Plaintiffs concede that they did not notify the District of Columbia of the lawsuit, as would be required by 42 U.S.C. § 9659(d)(1) for venue to be proper, because the District of Columbia "has no role" in this matter and most likely "is unaware of the Oak Ridge Reservation" cleanup. *Id.* at 6. Defendants cannot have it both ways, and their contradictory arguments must be rejected.

In their opposition, Plaintiffs assert that Defendants argue that they should have notified the District of Columbia of this lawsuit. Opp. at 6. That is inaccurate. Instead, Defendants assert that Plaintiffs should have filed this case in the Eastern District of Tennessee, *consistent with* Plaintiffs' Notice of Intent to Sue. Plaintiffs' alleged violations of CERCLA arising under 42 U.S.C. § 9659(a)(1) occurred in the Eastern District of Tennessee, notwithstanding that an EPA Administrator participated in a limited number of decisions related to the Site. Indeed, those decisions arose from the cleanup actions that are occurring *in Tennessee.* Plaintiffs have identified no case where a plaintiff brought a CERCLA section 310(a)(1) citizen suit in the District of Columbia against a federal agency because agency officials working in headquarters

14

were involved in the remedy decision-making, rather than bringing suit in the district court where the CERCLA cleanup activity took place. In fact, case law reveals that plaintiffs challenging a federal agency's cleanup decisions under section 310(a)(1) bring lawsuits in the district where the CERCLA cleanup occurs. *See, e.g.*, *Greenaction*, 2025 WL 808079 (CERCLA section 310(a)(1) action proceeding in the Northern District of California, in a case arising from a cleanup in San Francisco).

As shown by Plaintiffs' inclusion of Tennessee's attorney general in their Notice of Intent to Sue, the violations of CERCLA they allege in the Complaint occurred in Tennessee. Plaintiffs should not now be permitted to change position and claim that the violations occurred in the District of Columbia, when they concede that the District of Columbia has no interest in and likely does not even know about the alleged violations in Tennessee. Thus, the Court should transfer any remaining claims to the Eastern District of Tennessee.

### III.    The Merits of Plaintiffs' APA Claim Are Not Currently Before the Court.

Plaintiffs devote six and a half pages of their opposition brief arguing the merits of their APA claim, asserting that the Agencies violated the APA by failing to follow EPA guidance documents and ignoring the NCP. Opp. at 21–27. While Defendants vigorously dispute Plaintiffs' assertions as a matter of law and fact, the merits of the APA claim are not presently before the Court. Our motion for partial dismissal does not address the APA claim. Rather, we argue that the Court should transfer the APA claim (Claim 4) to the Eastern District of Tennessee, where Plaintiffs must pursue Claims 1 and 2 pursuant to CERCLA's special venue provision (as discussed above). In *Sierra Club v. Johnson*, this Court held that "[w]here a special venue provision places venue in a specific district, such a provision controls venue for that claim, even where it arises from a common nucleus of operative fact as a properly situated claim." 623

F. Supp. 2d. 31, 37 (D.D.C. 2009). As we noted in our opening brief, in *Sierra Club v. Johnson*, this Court transferred the entire case to the district specified by the special venue provision, even though two claims were "otherwise subject to proper venue in the District of Columbia," because "courts in this district have consistently transferred an entire case to another judicial district, rather than bifurcate the litigation." *Id.* at 38 n.4 (emphasis omitted). Thus, the Court should transfer Claim 4 (as well as Claim 3, if it is not dismissed) to the Eastern District of Tennessee, where the alleged CERCLA violations occurred, in accordance with CERCLA's venue provision, rather than bifurcate the claim from the case.

## CONCLUSION

For the reasons set forth above and in our opening brief, the Court should dismiss Count 3 in its entirety with prejudice. The Court should also transfer all remaining claims to the United States District Court for the Eastern District of Tennessee consistent with CERCLA's special venue provision.

Dated: December 23, 2025                  Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General


*/s/ Laura J. Brown*
Laura J. Brown (PA Bar 208171)
Senior Attorney
United States Department of Justice
Environmental Defense Section
P.O. Box 7611 (regular mail)
150 M St., NE (overnight)
Washington, D.C. 20044
Laura.j.s.brown@usdoj.gov
(202) 305-5314
*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 23rd day of December 2025 a true copy of the foregoing was served on all counsel of record via CM/ECF. All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Laura J. Brown*